ROBERT SELLICK, RESPONDENT, v. SAM FORSTER, APPELLANT.

Argued January 19, 1938—Decided July 30, 1938.

Before Justices TRENCHARD and PARKER.

For the appellant, *Edward R. McGlynn* (*Arthur T. Vanderbilt* and *Frederick W. Hall,* on the brief).

For the respondent, *Herbert R. Baer* (*Robert H. McCarter,* on the brief).

The opinion of the court was delivered by

PARKER, J. This is an appeal from judgment for plaintiff upon a second trial, after reversal at October term, 1934. The first judgment was reversed because the jury were instructed to allow interest though the claim was never liquidated by sending a bill, notwithstanding plaintiff was in a position to make up the figures; with incidental criticism of the trial court for having left the case to the jury without

any discussion of the "confused and contradictory" evidence. The question of interest comes up again on the present appeal.

The suit was for an unpaid balance of architect's fees. The architect's job was complicated interior reconstruction of a somewhat dilapidated building in Market street, Newark. The photographs and plans put in evidence are persuasive that this was a very difficult and tedious matter, involving an enormous amount of detail, and that the rate charged, and according to the evidence agreed on, of ten per cent. for completed work, and six per cent. on work planned but not executed, is not at all out of the way. Plaintiff's case was that there was an oral employment at these rates on a general reconstruction scheme which in fact ran over a period of years, with small payments from time to time on account, aggregating $3,900 (defendant claimed more) ; that he sent no bills because defendant had all the contractors' statements and other documentary data from which to figure them, and finally, after the statute of limitations had run (as claimed) as to the principal part of the work, defendant had shown him the door.

The "big job" of reconstruction was done in 1921 and 1922. Further work was done in 1924, 1926, 1927, 1928, 1929. Defendant claimed, and plaintiff denied, that these were all separate jobs. The suit was begun March 15th, 1930, and the statute of limitations was pleaded. Plaintiff's answer to this was (a) that all was one continuous contract, running over into the six-year period, *i. e.,* later than March 15th, 1924; and (b) two payments, allegedly "on account" one made March 22d, 1924, and one September 14th, 1929, the original check bearing the words "in full" which plaintiff erased, but the bank refused to cash it, and plaintiff got the check marked in evidence from the back of defendant's check book, drew it, changed the number to that of the rejected check, and defendant signed it.

Point I (a) challenges the refusal of the trial court to direct a verdict for defendant "as to all items * * * prior to March 15th, 1924, * * *" (six years before suit was begun).

We think there was a jury question here in two aspects; (1) some evidence, though meagre, of a continuous contract indefinite in duration, and carried over into the six-year period; (2) some evidence that one or both the above payments was or were on account of the "main job," as we may call it for convenience, assuming it had terminated more than six years before suit. It is argued under this point that payments on account of an acknowledged debt are ineffective to toll the statute unless the amount is liquidated or definitely ascertained; but we do not understand that our cases so hold, and think that the Pennsylvania cases cited are not in line with our decisions. See *Smith* v. *Gavin*, 5 *N. J. Mis. R.* 323; 136 *Atl. Rep.* 428, a suit for reasonable value of services to decedent. The old cases seem to say that defendant must have paid knowingly on account of a "larger debt," but do not say that the exact amount of that debt must have been ascertained. See *Trenton Banking Co.* v. *Rittenhouse*, 96 *N. J. L.* 450; 115 *Atl. Rep.* 443, and cases cited.

Point I (b) relates to the charge on the statute of limitations. Again the argument is predicated on the proposition that the amount must be "fixed, ascertained and specific" else the part payment is ineffective. What has just been said covers this point also.

It is claimed that there were contradictory instructions on this branch of the case, but we find only a proper comment on evidence indicating an alternative theory as to postponing the due date of the account.

So we think reversal is not required because of anything relating to the statute of limitations.

Point II relates to rulings on evidence. As to the first: plaintiff testified that he had not pressed defendant for payment nor started suit because defendant had said he was short of money, had to pay others, &c., and in general pulled a long face. The defendant undertook to meet this by evidence that he had plenty of money all the time. There are two grounds of appeal on this point, Nos. 3 and 4.

Ground 3: defendant's son on the stand. Defendant's counsel produced a mortgage dated April 30th, 1920, recorded

in due course and stamped as canceled May 19th, 1925. *Q.* What property did it cover? *A.* 246 Market street (the store in question). *Q.* And was made when? (objected to as immaterial and overruled). We cannot see that the time when the mortgage was *made* is at all material; and the date when it was made appears in the first question. The mortgage was not offered in evidence.

Ground 4 brings up the exclusion of a question to defendant's son, on direct. The witness, called for defendant, testified that he was personally acquainted from 1921 till 1930 with the financial condition of his father in the operation of "this business" and that the father ran it as an individual. "*Q.* Was there any period during that time when your father was not able to pay any bills that he owed?" (objected to, and excluded). It is argued that this was relevant to meet the testimony of plaintiff that when defendant was asked for money he had begged off on the ground that he was short of money. The reasoning of course is that a man in ample funds always pays what he owes, and that a man in ample funds would not ask a creditor for time: *ergo,* because defendant was solvent he did not ask for time. But we think this is a *non sequitur.* It assumes as a premise that a man in funds is always honest and always pays his debts, whereas it may well be and often is the case that he is not honest and does not pay his debts when he can avoid doing so; and in this very case the plaintiff's claim was that the defendant was simply putting him off to escape payment. We think the inference of no requests for time, meant to be drawn from the alleged fact of solvency, is too remote, and in line with the case of *Burke* v. *Kaley,* 138 *Mass.* 464, where in a suit for money lent the defendant undertook to prove a bank balance. Moreover, the answer expected would cut both ways, for a jury might well take the view that the defendant was simply trying to escape payment of a just debt. We see no harmful error here.

This seems to dispose of all the points argued for reversal except that relating to the allowance of interest on a figured balance of $9,671.10 from the beginning of the suit. This

was done under a stipulation that if the jury found for plaintiff, the court should determine whether interest should be added, and calculate the interest. This was done, and to a total verdict of $11,171.10 was added an interest item of $4,429.37. This we consider erroneous, and on the former appeal so held, giving our reasons. This is the law of the case, unless the second trial showed a state of facts justifying the allowance of interest, and we are unable to see that it does. The judgment under review will be amended by striking out the interest item, and stand affirmed for the sum of $11,171.10.   *Roth* v. *General C. & S. Co.,* 106 *N. J. L.* 516.